Good morning, Your Honors. Renee Maness here on behalf of Mr. Paul Remme. There's a fairly standard joke among the defense bar in Oregon that if the famous film Twelve Angry Men had been shot in Oregon, it would have been a very short film indeed. They would have taken one vote and things would have been done. But the Supreme Court said in Apodaca that Oregon's okay. So the question is whether or not a non-unanimous jury survived the decision in Apprendi. And you're asking us to overrule a decision of the United States Supreme Court. How do we do that? Because Apodaca was a plurality, Your Honor. And this Court in Miller v. Gamme noted that plurality decisions, when subsequently called into question by majority analysis of the Supreme Court, can in fact be addressed by this Court and can be questioned. So we look at the mode of analysis in Apodaca. You're asking us to declare that Apodaca is no longer good law. And every time we do that, the Supreme Court reminds us that they reserve to themselves the prerogative of informing us when their precedent is no longer precedent. So how do I get around that, notwithstanding the broad language in Miller v. Gamme? Certainly, this Court, when it took on the Blakeley changes and looked at the necessity of how they would impact a wide variety of decisions, such as the Walton case out of Arizona that had judicial fact-finding for death penalty aggravators and mitigators, this Court recognized before the Supreme Court analyzed in Ring that, in fact, Walton was incompatible with Blakeley. The two, the Sixth Amendment analysis could not stand. Blakeley doesn't get you there, though, because it was decided too late to help your client, right? We also have the retroactivity issue, but we do believe, given the Supreme Court's ---- We have the argument, but we've got a case that says no. So how can a three-judge panel overrule the decision in Shartz v. Payne? Shartz v. Payne adopted the analysis of the Tenth Circuit and was specific to the fact that it was a sentencing issue. The reason they declined to give retroapplication both in Shartz and in the Tenth Circuit was the distinction between a sentencing issue and a guilt phase issue where guilt had already been determined. That's a critical distinction here where the question is whether or not Mr. Remy has been proving guilty beyond a reasonable doubt. So we look back to the Apodaca issue. And in Apodaca, you had a great split among the justices. Four justices said there is no right to beyond a reasonable doubt as a component of the Sixth Amendment. There is absolutely no question that the majority of ---- But I thought Justice Powell issued the deciding opinion when he said that that principle may well apply to Federal jury trials, but it is not incorporated under the due process clause of the Fourteenth Amendment, is therefore not binding on the State of Oregon. Correct. The lone partial incorporation theory of Justice Powell is what left non-unanimous juries standing pursuant to a Sixth Amendment challenge in Apodaca. And the question comes forward. How does a ---- the controlling opinion by Justice Powell fall in the light of the Apprendi decision which dealt with the question of who decides the sentencing aggravators? Since, at least as I understand, I hear your attempt to distinguish sharp, but I'm ---- I have to tell you I'm not persuaded by the argument. So assuming that you can't invoke Blakely, I don't see how we get to overruling Apodaca. Both Apprendi, arguably Interprendi, and clearly, explicitly in Blakely, the question was, is beyond a reasonable doubt a requirement for the States? Does any fact that requires punishment or justifies punishment have to be proven beyond a reasonable doubt? Why shouldn't I look at Apprendi in light of Sherrill v. Summerlin, which dealt with the question of who decides imposition of the death penalty, judge or jury, and say that Apprendi allocated to the jury the determination of, in this case, a sentencing aggravator as opposed to the court, but we later said, I think in a case where the function was switched from judge to jury, that it was not retroactive? Actually, this Court opted to apply Ring retroactively and then was subsequently overturned in Schirrero. And there, the issue was similar to the ICE issue, which is also raised here. Once the jury had decided a fact, could a judge sentence based upon that? But ultimately, the factual finding rested with the jury and rested with the jury under a beyond-a-reasonable-doubt standard. And that's the question. Given that Apodaca explicitly rejected a beyond-the-reasonable-doubt standard as part of a Sixth Amendment jury. Or does it simply say it doesn't have to be unanimous? Am I incorrect? I thought that the standard in Oregon was that 10 of 12 must decide by proof beyond a reasonable doubt. And the question is, is 10 of 12 proof beyond a reasonable doubt? The five justices in Apodaca. Can you answer my question? Isn't the answer yes, 10 have to find proof beyond a reasonable doubt in Oregon? But the issue is those two documents, that's not proof beyond a reasonable doubt. The issue in Apodaca was, is unanimity necessary to give life to the proof beyond a reasonable doubt? Maybe I'm not making my question very clear. The standard is the same. The question is whether or not it has to be unanimous. Correct. In order to give effect to proof beyond a reasonable doubt. Well, you say that, but 10 have to find proof beyond a reasonable doubt. And the other two don't in Oregon. And the other two have doubts. And the question is, why are their doubts unreasonable? Why is 16 percent of a jury, this is not just 16 percent of everyone. This is a jury who's been properly vetted, who's been questioned, who the parties have agreed to place. And we are suddenly deciding that these two jurors, their doubts are necessarily and always constitutionally unreasonable, even though the social science doesn't support that. But Justice Powell spent a lot of time talking about the importance of permitting the States to be laboratories. And that's why we don't have to follow in lockstep with the Federal Government. And at that point, in 1972, there were not a lot of analyses of the impact of non-unanimity. If we're to look forward to today and still look at what happens when there's a lack of unanimity, what the social science studies show is it decreases deliberation. Let me see if I can get to the question a different way. Suppose that in Apprendi, New Jersey followed the Oregon rule, and only 10 jurors had to find by proof beyond a reasonable doubt. Wouldn't Apprendi still have come out the same way?  Why not? I find it terrible. Why couldn't that have been consistent, that as long as the jury decided the sentencing aggravator by 10 to 2 and not the judge, that comports with Apprendi? This is the question of whether or not the other two have to be involved. And the question is whether a jury which is not unanimous is actually a jury convinced beyond a reasonable doubt, or whether it is just a poll of the opinion of some of the juries. The Supreme Court has said, we won't give you a mathematical calculation to beyond a reasonable doubt, but that's precisely what happens when you don't have a unanimous jury. Five of the justices agreed in Apodaca that in order to give life to the concept of beyond a reasonable doubt, you had to have unanimity, and that that had been a longstanding tenet both at common law and in Supreme Court cases prior to Apodaca. This means you're a very able advocate, and I admire your chutzpah. But the bottom line is, unless Blakely is not retroactive, or rather, if you want us to say there should be applied retroactive contrary to our case law, and you want us to overrule Apodaca, other than that, you've got a problem, don't you? I am asking for a great deal. I fully acknowledge that, Your Honor. I'd say so. But as the Supreme Court has stated, and stated in Reed, there are frequently constitutional principles which someday find wide acceptance and great belief, and yet those first-loan voices were not necessarily heard. Isn't there another problem that you have as well with AEDPA? The failure to present, the failure to exhaust, that's the one. Well, beyond that as well, the standard for relief, for habeas relief under AEDPA, for us to say that there had been an error, not granted habeas relief, is that you have to show that the State court's decision is an unreasonable application of clearly established law by the United States Supreme Court. I actually looked that up. That came up in our discussion. And that language appears only in the deference provisions of the AEDPA. When a claim has been adjudicated on the merits by the State court, then you must find clearly established Supreme Court authority. This claim has not been adjudicated on the merits. Because you didn't present it. That's before back to the procedural bar. Correct. And we have the issues of both futility and Reed. And Reed specifically acknowledged three issues in terms of when a novel issue doesn't have to be exhausted. The third one, which is when arguably Supreme Court authority has called into question longstanding beliefs, and that's our argument.      And that's all I'm going to say. I think we're done. Okay. Time is up. Thank you. Thank you, Your Honor. May it please the Court, I'm David Thompson representing Superintendent Hill. Unless the Court has specific questions with respect to the State's position regarding retroactivity, the effect of Blakely on Apodaca, I intend to rest on my brief, but I'm happy to answer any specific questions that the Court may have. I have none. We have none. Okay. Thank you. Thank you. Excellent presentation. Remy versus Hill is submitted on the brief. Thank you very much, Counsel. Thank you. Thank you, Ms. Nance. The next case is on the calendar is Chapman versus Lampert, but that's submitted on the briefs. Right. So our next case for argument is Weaver versus Attorney General of the State of Montana.
judges: Paez, Tallman, Smith M.